UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


ANTHONY D. AZUKAS,                      :
            Plaintiff,                  :
                                        :
      v.                                :      Case No. 3:10-cv-745 (SRU)
                                        :
DR. MARK BUCHANAN, et al.,              :
            Defendants.                 :


## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Anthony D. Azukas, incarcerated at Garner Correctional Institution in

Newtown, Connecticut, commenced this civil rights action *pro se*.  In his amended complaint he

asserts claims of deliberate indifference to serious medical needs against defendants Drs. Mark

Buchanan and Edward Blanchette.  The defendants have filed a motion for summary judgment.

For the reasons that follow, the defendants' motion is granted.

## I.    Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff

must present affirmative evidence in order to defeat a properly supported motion for summary

judgment).

When ruling on a summary judgment motion, the court must construe the facts in the

light most favorable to the nonmoving party and must resolve all ambiguities and draw all

reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398

1

U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d

Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the

nonmoving party").  When a motion for summary judgment is properly supported by

documentary and testimonial evidence, however, the nonmoving party may not rest upon the

mere allegations or denials of his pleadings, but must present sufficient probative evidence to

establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986);

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Only when reasonable minds could not differ as to the import of the evidence is summary

judgment proper.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban

Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving party submits

evidence that is "merely colorable," or is not "significantly probative," summary judgment may

be granted.  *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will
> not defeat an otherwise properly supported motion for summary judgment;
> the requirement is that there be no genuine issue of material fact.  As to
> materiality, the substantive law will identify which facts are material.  Only
> disputes over facts that might affect the outcome of the suit under the
> governing law will properly preclude the entry of summary judgment.
> Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory

evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at

248.

If the nonmoving party has failed to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof at trial, then summary judgment is

appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to

any material fact,' since a complete failure of proof concerning an essential element of the

2

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## II.  Facts[1]

At all times relevant to the incidents underlying this action, Azukas was confined at Garner Correctional Institution ("Garner") in Newtown, Connecticut. Defendant Buchanan is the Director of Medical Services for Correctional Managed Health Care, the division of the University of Connecticut Health Center that provides health care to Connecticut inmates.

The Utilization Review Committee ("URC") is a group established to review requests for special treatments and tests for Connecticut inmates. If a prison physician wishes to prescribe special tests or seek a consultative examination by a specialist, he first must obtain URC approval. The URC physician panel consists of three physicians. *See* Pl.'s Mem., Doc. #30-1, at 41 (Utilization Review Manual). Buchanan and Blanchette admit that they were part of the URC.

On March 28, 2007, Azukas "blacked out" and fell in his housing unit. He was taken to the University of Connecticut Health Center.   Azukas did not receive any treatment for his wrist at that time.

Upon his return, Azukas complained of pain and swelling in his right wrist. In August 2007, Dr. Raymond Castro examined Azukas's wrist, and ordered x-rays. The x-rays showed no

---

[1]The facts are taken from the parties' Local Rule 56(a) statements and, primarily, the attached exhibits. Where there is a dispute between the facts presented, the evidence is

evidence of fracture or dislocation, but did suggest a possible subchondral cyst or erosion. Subchondral cysts can be painful, and are sometimes surgically removed.  In September 2007, Castro submitted a request to the URC seeking a referral to an orthopedist.  The request was denied on September 20, 2007.  Between September 2007 and December 2008, Azukas made numerous visits to Garner's out-patient medical facility, complaining of pain and cracking in his wrist.  On October 31, 2008, Castro examined Azukas's wrist and noted normal range of motion and no deformity, but observed a cracking sound upon flexion.  Castro provided Azukas a wrist support.

On December 18, 2008, Azukas filed an Inmate Administrative Remedy Form, requesting a Health Service Review.  In his request, Azukas stated that the cracking and pain in his wrist was getting progressively worse, and that the wrist support he had been given did nothing to alleviate the pain or cracking.  Azukas's Health Service Review was denied.

On December 18, 2008, Azukas was examined by Dr. James O'Halloran at Garner. O'Halloran believed that the popping in Azukas's wrist was due to a ligament tear.  He ordered x-rays, and made a URC request.

On January 16, 2009, Castro informed Azukas that there was no change between Azukas's 2007 and 2008 x-rays.  On that date, Castro submitted a second URC request for Azukas to be examined by an orthopedist.  On January 20, 2009, that request was denied.  The URC reasoned that there was little objective evidence of any pathology.  The defendants admit that an x-ray is not the best diagnostic test to diagnose ligament injury.

On February 2, 2009, Azukas filed an Inmate Administrative Remedy Form.  In that form, Azukas protested the URC's second denial of an orthopedic visit.  In his filing, Azukas

construed in the light most favorable to the non-moving party – here, the plaintiff.

stated that the cracking and pain were getting progressively worse, and more constant.

On February 2, 2009, Castro conducted a full examination of Azukas's wrist.  Castro again concluded that Azukas should be seen by an orthopedist, and submitted a third request for an orthopedist exam to the URC.  In his request, Castro noted that Azukas was suffering from persistent pain and a popping sound in his wrist, and that his symptoms were getting worse.

On February 3, 2009, the URC denied the renewed request.  The panel stated that the full examination did not show much abnormality.  They denied the request for a consultative examination and recommended range of motion exercises, anti-inflammatory drugs if needed, and activity modification.

In October 2009, Azukas filed a petition for writ of habeas corpus in state court seeking medical treatment for his wrist.  At a pretrial conference in April 2010, defendant Blanchette agreed to schedule a consultative orthopedic examination before July 2010.

A third set of x-rays were taken on April 28, 2010.  The x-rays showed that the osseous structures and joint relationships were intact and there was no acute fracture or dislocation.  On April 29, 2010, the URC, pursuant to a court agreement, approved a consultative orthopedic examination.  Azukas underwent a consultative orthopedic examination with Dr. Augustus Mazzocca on May 6, 2010.  Mazzocca ordered an MRI to evaluate the dorsal tendons and prescribed a wrist splint and range of motion exercises.  The URC approved the MRI and the test was performed on June 30, 2010.  The test results showed a nonspecific increased signal at the distal pole of the scaphoid and in the overlying soft tissues or tendons that was attributed to possible posttraumatic, infectious or inflammatory etiologies, and an apparent discontinuity at the central membranous portion of the Triangular Fibrocartilagenous Cartilage Complex which was thought to be normal fenestration or a small tear.

After examining Azukas and reviewing the MRI results, Mazzocca opined that Azukas was not a candidate for operative care.  He recommended continued conservative, non-operative care.  Dr. Craig Rodner, a hand surgeon, reviewed the findings and concurred in that opinion.

## III.   Discussion

Azukas claims that the defendants were deliberately indifferent to his serious medical need because the URC failed to approve an orthopedic examination when requested by the prison doctor.  Although Azukas includes allegations regarding the medical care provided to him by Castro at Garner, Castro is not a defendant and those allegations are not the subject of any claim in this lawsuit.  The only issue is whether the URC properly denied additional testing and an orthopedic examination.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To state such a claim, the plaintiff must allege facts demonstrating sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  *Id.* at 104-06.

Because mere negligence will not support a section 1983 claim, not all lapses in prison medical care constitute a constitutional violation.  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  In addition, inmates are not entitled to the medical treatment of their choice.  *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance v. Armstrong*, 143 F.3d 698, 703

6

(2d Cir. 1998).  The conduct complained of must "shock the conscience" or constitute a "barbarous act."  *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988).  In addition, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

There are both subjective and objective components to the deliberate indifference standard.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995).  Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration or extreme pain.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

For purposes of deciding this motion, the defendants concede that Azukas suffers from a serious medical need.  Thus, the court need only consider the subjective component of the deliberate indifference test.

A prison doctor's medical opinion regarding treatment is presumed valid absent proof that it was "such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment."  *Richardson v. Blanchette*, No. 3:03CV1621(AWT), 2006 WL 496010, at *7 (D. Conn. Mar. 1, 2006).

Azukas was treated at Garner for his wrist pain.  The URC, however, denied repeated requests for an orthopedic examination.  The January 2009 denial noted little objective evidence

of pathology to warrant an orthopedic consult to rule out the need for surgery and recommended inclusion of the results of a full wrist examination if the request were resubmitted.  The February 2009 denial acknowledged the full wrist examination, but noted that the examination did not show sufficient abnormal results to warrant an orthopedic consult.  The URC recommended range of motion exercises, anti-inflammatory medication and activity modification.  This recommendation mirrors the subsequent opinion of the orthopedist.  The defendants each admitted that, generally, x-rays are not the best diagnostic tool to diagnose a nerve, tendon or cartilage injury.  *See* Pl.'s Mem., Doc. #30-1 at 24, 37.  Azukas has presented no evidence, however, that x-rays are never appropriate tests in this circumstance, or that additional tests were required under the circumstances of this case.

It is clear that over the course of three years Azukas repeatedly complained about wrist pain, and it is unfortunate that that pain was not alleviated.  Nevertheless, Azukas has presented no evidence, other than his own opinion, that the URC denials of a consultative orthopedic examination were not based on accepted professional judgment.  Azukas has not shown that either defendant actually was aware of a substantial risk that Azukas would suffer serious harm as a result of his actions or inactions and, therefore, has not met his burden of demonstrating a genuine issue of material fact regarding the subjective component of the deliberate indifference test.  The defendants' motion for summary judgment is granted.

**IV.     Conclusion**

The defendants' Motion for Summary Judgment [**Doc. #25**] is **GRANTED**.  The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of March 2012.

8

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge